# THE ATTORNEY GENERAL
## OF TEXAS



GROVER SELLERS
XXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable C. H. Cavness
State Auditor
Austin, Texas

Dear Sir:

Opinion No. 0-6652
Re: Apportionment to counties
under Art. 3912e, Section
6 (a), V. A. C. S.

We have received your recent communications in regard to the above subject, and we quote same as follows:

"We are making an audit of the books of account and records of the JUDICIARY SECTION - COMPTROLLER'S DEPARTMENT (as maintained and administered by the Comptroller of Public Accounts) for the three-year period ended August 31st, 1944, which audit includes a general review of the transactions for prior years. This request for an opinion pertains to the apportionment to counties, which apportionment is on a per caption basis as provided for in Article 3912e, Sections 1, 2, 3, 5, and 6a, Vernon's Annotated Revised Civil Statutes.

"In collaboration with the personnel of the Comptroller's Department we have studied the pertinent Statutes, Opinions rendered by your Department, and the Legislative Appropriation Bills relative to the per capita apportionment - including the Appropriations for the payment of the apportionments, and the appropriations for fees and costs of sheriffs, etc., out of which transfers are to be made for the payment of a part of the apportionment to the respective counties.

"In our audit we find that in the Comptroller's records these apportionment payments have been made each year during the months of September, December, March, and June, in order to conform with the State's fiscal year ending each August 31st. In effect this means that the first payment for each quarterly apportionment is made in September rather than in January, as set forth

in the Statutes, and on a fiscal year basis rather than on the calender year basis on which the counties operate.

"We also find in our audit that a few transfers have been made in some of the years from the appropriation for fees and costs of sheriffs, etc., to the Apportionment Fund for the payment of apportionment to those counties which have currently changed from the fee basis to the salary basis, and that in many instances the Comptroller has not made the specified transfers. Hence, we have several bases of payment over a period of some years.

"It appears to us that under the existing Statutes it would be more practical to predetermine the exact amounts that each county should receive in the way of apportionment as of the beginning of each _calendar_ year, based upon the preceding tax roll and predicated upon the receipt of copies of Commissioners' Court Minutes- a schedule could be prepared which would enable the Comptroller to make equal quarterly payments, the first possibly by February 15th and the three succeeding payments quarterly as set forth in the Statutes, that is, April 1st, July 1st, and October 1st. This would mean of course that the entire schedule of apportionment would be set up on a calendar year basis, January 1st to December 31st - for instance, in setting this up for the calendar year 1944, the January 1st payment, the April 1st payment, and the July 1st payment, would be paid from the 1943-44 appropriation and the October 1st payment would have to be made out of the 1944-45 appropriation.

"In the Appropriation Bills, as passed by the 47th and the 48th Legislatures, we find the following Appropriations for apportionment to counties at 10¢ per capita, etc.:

"'Year Ended August 31st, 1942    $486,677.60
  Year Ended August 31st, 1943     486,677.60
  Year Ended August 31st, 1944     400,000.00
  Year Ended August 31st, 1945     400,000.00'

In the Appropriation Bills for the same four-year period we have appropriations for fees and costs of sheriffs, etc., as follows:

"'Year Ended August 31st, 1942     $195,000.00
Year Ended August 31st, 1943      195,000.00
Year Ended August 31st, 1944      100,000.00
Year Ended August 31st, 1945      100,000.00'

"We also find this wording in both of the above mentioned Legislative Bills:

"'Should any county, by election of the Commissioners' Court, change from salary to fee basis or vice versa, the Comptroller shall make adjustment in the Appropriations by transferring the correct amount from appropriation made for fees and costs of sheriffs and other county officials to appropriation to pay counties on a per capita basis or vice versa, as the case may be.'

"In order to somewhat simplify the complicated calculations necessary to determine the proper amounts to be paid each county quarterly under this apportionment set-up out of the two above mentioned appropriations, bearing in mind that the respective counties operate on the calendar year, January 1st to December 31st, and the State Appropriations are set up on a fiscal year, September 1st to August 31st, we will discuss the mechanics of preparing apportionment schedules by counties for the calendar year beginning January 1st, 1944, ending December 31st, 1944, which apportionment payments have to be paid out of the fiscal year's appropriations ended August 31st, 1944 and August 31st, 1945.

"In order to prepare such a schedule on a predetermined basis, assuming that the $400,000.00 appropriation for apportionment at 10¢ per capita applies only to those counties with a population of 20,000 or more, according to the 1940 Federal Census, it is necessary to multiply the per capita population of each county by 14¢ per capita in order to arrive at the total amount of apportionment due such counties at the Statutory maximum amount of 14¢ per capita. In addition to this computation, however, we have to consider certain counties which had a population of less than 60,000 according to the 1930 Federal Census and which had at least a 50% increase in ad valorem valuations (according to the last approved tax roll) over the 1930 tax roll because for those counties such increases raise the per capita rate

to 25¢. Still assuming that only those counties would participate in the $400,000.00 appropriation we have to prepare another schedule to provide apportionment for those counties which had a population of under 20,000 according to the 1940 Federal census but which elect to operate on the Salary basis. This schedule would be prepared on a basis similar to that outlined above by multiplying the county per capita population by the 14¢ rate and/or the 25¢ rate as the case may be.

"Supposing these calculations resulted in a schedule showing a total apportionment due all counties of $800,000.00 for the calendar year 1944 but the Legislature has only appropriated $400,000.00 (or 50% of the total amount needed), we could pay each county only 50% of the amount due under the Statutory maximum per capita of 14¢ and 25¢.

"Then we apply the same plan to the second schedule which would mean that if the total apportionment due all participating counties with a population of under 20,000 totaled $50,000.00 and we could only pay them 50% of the amount due, or a total of $25,000.00 - we assume that this $25,000.00 would have to be transferred from the appropriation for fees and costs of sheriffs, etc., to the Apportionment Fund before such couties could receive their quarterly payments. However, the quarterly payments as shown to be due in the second schedule would have to be based upon the predetermination of tax valuations as shown by the October 1943 tax rolls, together with the obtaining, during January, of copies of the Minutes of the Commissioners' Courts for all participating counties, before any proration could be made to these under 20,000 population counties. Obviously, the October 1st payment under the second schedule would also have to be made out of the 1944-45 appropriation for fees and costs of sheriffs.

"We wish to present the following questions:

"1. Are we correct in assuming that the $400,000.00 appropriation for the fiscal year ended August 31st, 1944 should be apportioned as outlined above to only those counties which had a population of 20,000 and over, according to the 1940 Federal Census, and in quarterly payments on the First of January, April and July

1944, based upon the October 1943 ad valorem valuations per approved tax rolls?

"2.  Are we correct in assuming that the October 1st, 1944 payment would have to be made out of the 1944--45 appropriation?

"3.  Should the $400,000.00 apportionment appropriation for the year ended August 31st, 1944, and as a matter of fact all fiscal year appropriations, be disbursed in equal quarterly payments, in this case $100,000.00 each quarter?

"4.  Are we correct in assuming that all annual apportionments due participating counties which had population of under 20,000 (according to the 1940 Federal Census) are not to be paid out of the $400,000.00 apportionment appropriation but are to be paid only out of funds transferred to it from the appropriation for fees and costs of sheriffs?

"5.  If it is found that some counties have been overpaid or underpaid apportionment by the Comptroller over a period of say five or six years, could such errors be corrected from the remaining apportionment balance or by adjustments in payments under future appropriations, both for apportionment and for fees and costs of sheriffs, etc.?

"6.  In the event a county had received an overpayment of apportionment over a period of years and then elected to operate on the fee basis, what procedure should be followed by the Comptroller to secure refund of such overpayment?

"7.  Supposing it would be necessary to make a transfer from the apportionment appropriation to the appropriation for fees and costs of sheriffs, etc., as set forth in the Appropriation Bills, upon what basis should the amount of such transfer be calculated?

"8.  In the event a county ad valorem valuation increased more than 50%, placing such county in the 25¢ per capita rate and then the following year the valuations decreased to where the actual increase was less than 50%, would such county remain on the 25¢ per capita basis or would it revert to the 14¢ per capita basis?  In other words, are the ad val-

orem valuation increases to be considered <u>each year</u> in arriving at the basis of apportionment for those counties which had a population of less than 60,000 inhabitants according to the 1930 Federal Census?

"Should you desire any further information we may have relative to the above, please advise.

"Under date of June 8th, 1945, we requested an opinion with reference to our current audit of the Judiciary Section - Comptroller's Department (assigned Opinion No. 6652). We ask that you kindly incorporate this supplemental request with it.

"Since making this request to you we find that the Federal Government released a Special Census for Jefferson County, Texas, as of June 15th, 1943 showing a population of 191,942, whereas the last preceding Decennial Federal Census of 1940 showed a population of 145,329.

"<u>Question No. 9.</u> (a) Are we correct in assuming that a Federal Special Census taken subsequent to the regular census of 1940 would supersede the 1940 Decennial Federal Census insofar as per capita apportionment is concerned, and also if this is correct, would the same interpretation apply in all instances where the "preceding Federal Census" is a governing factor under the Judiciary Section appropriations?

"(b) If such Federal Special Census is the census which should be used in allocating State apportionment, would new allocations resulting take effect as of the beginning of each calendar year (that is, January 1st) subsequent to the date of such Special Census, or would they take effect as of the date of the census, which in the case of Jefferson County was June 15th, 1943?"

We have carefully considered your statement of facts and conclusions of law submitted with your questions and find same to be a very able and informative discussion on the question of apportionment to counties under the Salary Law (Art. 3912e, V. A. C. S.). We hereinafter set out the various sections of the laws pertinent to your inquiry.

Sections 2 and 6 (a) of Art. 3912e, V. A. C. S., provide as follows:

"Sec. 2.  The Commissioners' Court of each county in the State of Texas, at its first regular meeting in January of each calendar year, shall, by order made and entered in the minutes of said court, determine whether precinct officers of such county (except public weighers and registrars of vital statistics shall be compensated on a salary basis as provided for in this Act, or whether they shall receive as their compensation, such fees of office as may be earned by them in the performance of the duties of their offices, and it shall be the duty of the county clerk of each county to forward to the Comptroller of Public Accounts of the State of Texas on or before the 31st day of January a certified copy of such order.  In counties having a population of less than twenty thousand (20,000) inhabitants according to the last preceding Federal Census, it shall likewise be the duty of the Commissioners' Court, by its order duly made and entered of record at its first regular meeting in January of each calendar year, to determine whether county officers of such county (excluding county surveyors, registrars of vital statistics and notaries public) shall be compensated for the fiscal year on the basis of an annual salary or whether they shall be compensated on the basis of fees earned by them in the performance of their official duties, and it shall also be the duty of the county clerk to forward to the Comptroller of Public Accounts of the State of Texas, on or before the 31st day of January, a certified copy of said order of said Commissioner's Court.

"Sec. 6.  (a)  In counties wherein the county officials are on a salary basis, in addition to the monies deposited in said Officers' Salary Fund or funds under the provisions of Sections 1, 3 and 5 of this Act there shall be deposited therein quarterly on the first day of January, April, July and October of each year, such sums as may be apportioned to such county under the provisions of this Act, out of the available appropriations made by the Legislature for such purposes provided, however, that in counties wherein the Commissioners' Court is authorized to determine whether county officers shall be compensated on a salary basis, no apportionment shall be made to such county until the Comptroller of Public Accounts shall have been notified of the order of the Commissioners' Court that the county officers of such county shall be

compensated on a salary basis for the fiscal
year, and in that case the first quarterly
payment of such apportionment shall be made
in fifteen (15) days after receipt of such
notice by the Comptroller, and the remaining
payments on the dates hereinabove prescribed.
It shall be the duty of the Comptroller of
Public Accounts to annually apportion to all
counties in which the county officers are to
be compensated on the basis of a salary any
monies, appropriated for said year for such
apportionment; each county entitled to parti-
cipate in such apportionment shall receive
for the benefit of its Officers' Salary Fund
or funds its proportionate part of the ap-
propriation which shall be distributed among
the several counties entitled to participate
therein, on the basis of the per capita popu-
lation of each county according to the last
preceding Federal Census; provided that the
annual apportionment for such purposes shall
not exceed fourteen (14¢) cents per capita
of said population of each county where
county officers are compensated on a salary
basis under the provisions of this Act.
Provided that in all counties which had a
population of less than sixty thousand (60,000)
inhabitants in 1930 according to the last
preceding Federal Census and which now have
ad valorem valuations for all purposes accord-
ing to the last approved tax roll of such
county, which have increased at least fifty
(50) per cent over the valuation for 1930,
the amount to be paid to each of said counties
for its salary fund shall be the sum not to
exceed twenty-five (25¢) cents per capita
based on the 1930 population. The quarterly
payment of such apportionment of such appro-
priation shall be made on warrants drawn by
the State Comptroller upon the State Treasury
payable to the county treasurer of the county
in whose favor the apportionment is made and
said warrants shall be registered by the Comp-
troller and the Treasurer and shall be mailed
by the Comptroller to the treasurer of the
county."

Section 10 of the Judiciary Section - Comptroller's
Department of the appropriation act of the 48th Legislature
provided as follows:

                                    For the Years
                          Beginning          Ending
                          September 1,     August 31,
                              1943             1945

"10.   Apportionment to
       counties at 10¢
       per capita where county
       officers are paid sal-
       aries (per Ch. 465,
       Sec. 6a, 2d C. S.,
       Acts, Forty-fourth
       Legislature. Should
       any county, by election
       of the commissioners
       court, change from
       salary to fee basis or
       vice versa, the Comp-
       troller shall make
       adjustment in the
       appropriations by
       transferring the cor-
       rect amount from
       appropriation made
       for fees and costs
       of sheriff and other
       county officials to
       appropriation to pay
       counties on a per capita
       basis or vice versa as
       the case may be. . .$400,000.00   $400,000.00 "

        Section 18 of the Judiciary Section - Comptroller's
Department of the appropriation act of the 47th Legislature
had substantially the same provisions as said Sec. 10, supra,
although the amount appropriated for such purposes was dif-
ferent.

        The hereinafter numbered paragraphs answer the cor-
respondingly numbered questions submitted by you.

        1. No. It is our belief that the $400,000.00 ap-
propriation was intended to cover all counties then on a
salary basis, i. e., those which had a population of 20,000
inhabitants, or over, according to the 1940 Federal Census,
and those which had a population of under 20,000 inhabi-
tants according to the 1940 Federal Census, and which had
elected to operate on a salary basis on or prior to January
31st, 1943. The 48th Legislature met in January of 1943
and enacted the appropriation for apportionment to counties

for the year beginning Sept. 1, 1943 and ending Aug. 31, 1944, and the year beginning Sept. 1, 1944 and ending Aug. 31, 1945. It is only reasonable to believe that such appropriations were intended to cover all counties on the salary system at the time such appropriations were passed.

2. Yes, but such payment would include the portion for the month of September, 1944, also. In other words, the quarterly payments should be as follows: 1st payment for the months of January, February and March 1944; 2nd payment for the months of April, May and June, 1944; 3rd payment for the months of July and August, 1944, (September cannot be included in this payment out of the appropriation ending August 31, 1944); and the 4th payment for the months of September, October, November and December, 1944. The 1st, 2nd and 3rd of such payments would be payable out of the appropriation for the fiscal year ending August 31, 1944, and the 4th payment out of the appropriation for the fiscal year beginning September 1, 1944. The statute directs that these payments be made on the first day of January, April, July and October of each year.

3. No, it is obvious from our answer No. 2 that this would be impossible.

4. No. While your assumption would be true in cases where such counties of under 20,000 population according to the 1940 Federal Census had elected to operate on the salary system since Jan. 31st, 1943, as they would then not be included in the 1943-1944 apportionment appropriation, we do not believe such assumption correct in regard to those of such counties that changed to the salary system on or prior to Jan. 31st of the calendar year in which the biennial apportionment appropriations were passed. In such cases the Comptroller would be notified of such change of the system of paying the counties' officials on or before Jan. 31st of such year, as required by Sec. 2 of Art. 3912e, supra, and in time to be included in the apportionment appropriation for the ensuing biennium. In cases where such counties elected to operate on a salary basis on or prior to Jan. 31st of the year in which the biennial apportionment appropriations in question were passed, and since Jan. 31st of the next preceding year in which the Legislature met in Regular Session, then until Sept. 1st of the year in which the biennial apportionment appropriations in question were passed the apportionment to such counties would be made by the Comptroller from transfers of the proper amount from the appropriation made for fees and costs of sheriffs and other county officials to the appropriation to pay counties on a per capita basis. On Sept. 1st of said year such counties would then come under the apportion-

ment appropriation and thereafter, as long as such counties remained on a salary basis, their apportionment on a per capita basis would be paid from the current appropriations to pay counties on a per capita basis, and not from trans-- fers from the appropriations made for fees and costs of sheriffs and other county officials. Regardless of the source of the funds by which the apportionment on a per capita basis is made to the counties, i. e., either from the sums appropriated for apportionment on a per capita basis or by transfer to such appropriation from the sums appropriated for fees and costs of sheriffs and other county officials, the apportionment payments should be made on a calendar year basis, as suggested by you.

5. We are unable to find any statute authorizing the Comptroller to make adjustments of these apportionments where there have been overpayments or underpayments in past years. It is our opinion that where any county or counties have been overpaid or underpaid in allocations prior to the calendar year 1945, such error or errors cannot be adjusted out of a current or future apportionment, as all such appro- priations must be used for the year for which they are appro- priated.

6. This question is answered by our answer No. 5, supra.

7. If the necessity for the transfer of funds from the apportionment appropriation to the appropriation for fees and costs of sheriffs and other county officials is occasioned by a county's changing from a salary basis to a fee basis then the amount to be transferred would be a sum equal to the amount such county would have received from the apportionment appropriation had it remained on a salary basis. We are unable to conceive of any other equitable method of determining such amount.

8. We believe the practice (if such has been the practice) of the Comptroller basing the apportionment to par- ticipating counties on the sum of fourteen (14) cents per capita and, in instances where such participating counties had a population of less than sixty thousand inhabitants in 1930 according to the last preceding Federal Census and which now have ad valorem valuations for all purposes according to the last approved tax rolls of such counties which have in-- creased at least fifty per cent (50%) over the valuation for 1930, basing the apportionment on the sum of twenty-five cents (25¢) per capita according to the 1930 population, to be unauthorized by law. Section 6(a) of Art. 3912e, supra, is merely a pre-existing law authorizing an appropriation

not to exceed such sums. The 48th Legislature in its appropriation for the biennium beginning September 1, 1943, and ending August 31, 1945, apportioned such sums to all the participating counties on the basis of ten cents (10¢) per capita, and the 47th Legislature also designated the basis of ten cents (10¢) per capita in its appropriation for such purposes. Thus, while the Legislature could have raised its apportionment of such sums to a per capita basis of not to exceed fourteen cents (14¢), and twenty-five cents (25¢) in certain counties, without a change of pre-existing law, it did not do so in the appropriation bills in question, and there is no authority for the Comptroller to make an apportionment to any participating county in an amount exceeding ten cents (10¢) per capita.

9. Yes. We are enclosing a copy of our opinion No. 0-6499 which answers part (a) of your question.

In regard to part (b) of your question, it is our opinion that the first quarterly payment to said county immediately following such Federal Special Census, in this case the July payment, should be based on the per capita population of said county as shown by such Federal Special Census.

Trusting the foregoing fully answers your questions, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Robert L. Lattimore, Jr.
   Robert L. Lattimore, Jr.,
   Assistant

RLL:zd:wc


APPROVED NOV 17, 1945
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/J.C.D. Chairman